PEOPLE'S BUILDING, LOAN AND SAVINGS ASSO-
    CIATION AND L. H. GROESBECK, RESPOND-
    ENTS, v. OTIS FOWBLE, MARY BOREMAN ET AL.,
    APPELLANTS.

1. *Loan and Saving Association—Stock—Trust Deed—Action to Foreclose.*

> The People's Building, Loan & Savings Association, a corporation organized under the laws of the state of New York, and doing business in the state of Utah, issued to F., a resident of Utah, a certificate declaring him to be the holder of 30 shares of its capital stock. F. received the certificate in consideration of an entrance fee, and payment of a monthly installment of

65 cents on each share of the stock. The stock at maturity was to be worth $100 per share. Afterwards F. made application for a loan of $3,000, and received $2,700 from the association; the $300 being retained as premium. Interest was to be paid on the $3,000 in installments of $12.51 per month, and he was also to pay $12.51 per month premium in addition thereto. These payments were to continue for a period of eight years, until the stock would be worth $100 per share. At the time of procuring the loan, F. executed a bond in the sum of $6,000 as security, and a trust deed on certain real estate as further security, for the payment of the $3,000, principal, interest, and premium. Payments were to be made to the treasurer of the association as provided in the bond. F. was also to keep the buildings and improvements on the premises insured in the sum of at least $3,000, and to pay all taxes and assessments which might be levied against the premises. As a part of the same transaction, F. also assigned all his stock to the association as security. F. and wife afterwards conveyed the mortgaged premises to B., who assumed and agreed to pay the indebtedness secured by the trust deed. Dues, interest, premiums, and fines were paid up to a certain date; and all payments were made at Ogden, Utah, to the duly authorized agent of the association, but thereafter no further payments were made. Default was also made in keeping the building and improvements insured, and in the payment of taxes. Thereupon the association instituted suit against F. and B. et al. for the foreclosure of the trust deed. At the trial the court refused to credit the defendants with the monthly payments of premium amounting to $512.50; regarding them as belonging to the association, and as not received in extinguishment of the debt. *Held*, that the contract was governed by the laws of Utah; that the $512.50 paid as premiums on the stock must be applied in reduction of the debt.

2. *Same—Contract—Place of Performance.*

The general rule is well settled that where a contract is made in one state or country, and contains express stipulations that it is to be performed in another, it will be governed by the laws of the place of performance.

(No. 949.    Decided July 1, 1898.)

Appealed from district court, Weber county; H. H. Rolapp, *Judge.*

Action by the People's Building; Loan & Savings Association against Otis E. Fowble and others. From a judgment for plaintiff, defendants appeal. *Reversed.*

*H. H. Henderson* and *G. F. Boreman,* for appellants.

*Valentine Gideon,* for respondent.

BARTCH, J.:

It appears from the record that on November 1, 1890, the plaintiff association issued to the defendant Fowble a certificate declaring him to be the holder of 30 shares of its capital stock, which at maturity were to be worth $100 per share. The certificate, it appears, was issued in consideration of an entrance fee, and of a monthly installment of 65 cents to be paid to the association by the holder for each share, on or before the last Saturday of each month, for 96 months. On November 10, 1890, Fowble, being desirous of obtaining money on his certificate, executed to the association a bond in the penal sum of $6,000, conditioned to pay to it or its attorney the sum of $3,000 in eight years from date thereof, and the further sum of $12.51, contribution of interest and $12.51 contribution of premium, which interest and premium payments were to commence on November 29, 1890, and be made on or before the last Saturday of each and every month thereafter; and if so made, then the obligation was to become void, otherwise to remain in full force and effect. Simultaneously with the execution of this bond, Fowble and his wife executed a deed of trust to the association on certain real property situated in Ogden, Utah,

as further security for the payment of the $3,000 and interest and premiums provided for in the bond. The provision respecting the payment of the principal, interest and premium is the same as that in the bond, and the payments were to be made to the treasurer of the association according to the conditions of the bond. The trust deed also contains provisions whereby the grantors were to keep the building and improvements on the premises insured in the sum of at least $3,000,—the policy to be assigned to the association,—and whereby they were to pay all taxes and assessments which might be levied on the premises. While in both these instruments the principal sum is stated to be $3,000, it is admitted by stipulation that the amount which Fowble actually received from the association was but $2,700, although the interest and premiums were paid on the basis of $3,000. The $300 were retained by the association as premium bid for the loan. As a part of the same transaction, Fowble also assigned all his stock to the association as security for the loan. On August 26, 1891, Fowble and wife conveyed the mortgaged premises to the defendant, Mary Boreman, who assumed and agreed to pay the indebtedness secured by the trust deed as required by the rules of the association. The payments of dues, interest, premiums, and fines, it appears, were made up to June 1, 1894; and it is admitted in the record that all of such payments were made at Ogden, Utah, to the duly-authorized agent of the association. Default was made in keeping the buildings and improvements insured, and in the payment of taxes. No payments of dues, interest, or premiums appear to have been made after June 1, 1894. This action was instituted to foreclose the deed of trust on February 6, 1897. At the trial the court rendered judgment in favor of the plaintiff on the principal debt in the sum of $1,860, with

interest thereon from June 1, 1894, for certain sums paid by the plaintiff for taxes and insurance, and for $100 counsel fee, and decreed that the trust deed be foreclosed, the property sold, and that out of the proceeds the several sums constituting the judgment be paid. It appears that in rendering this judgment the court refused to credit the defendants with the monthly payments of premium amounting to $512.50, having regarded them as belonging to the association, and as not received in extinguishment of the debt. Thereupon the defendants appealed.

It is insisted for the appellants that the $512.50 paid in monthly installments as premiums on the stock should have been allowed by the court as a credit on the principal sum of $2,700, which sum the court found to be the amount borrowed, because, as appears to be maintained, the payment of these premiums had the effect of extinguishing the debt, to the extent of the amount so paid. For the respondents it is contended that under the contract of the parties all the moneys were to be paid in the state of New York; that this constituted it a contract made and to be performed in that state, and that therefore, the rights of the parties are to be measured and enforced according to the laws of the state of New York; and that under those laws the association had a right to take premiums so paid, and was not compelled to account for them to the appellants in this proceeding. The respondent, to maintain its contention, appears to rely on the clause in the deed of trust which provides for the installments "to be paid unto the treasurer of said association according to the conditions of the bond this day executed and delivered by the said Otis E. Fowble and Elizabeth Fowble to the said party of the third part," and on that part of the bond which states in effect that Fowble, of Ogden, is held and bound unto the association,

a body corporate, created and incorporated under and in compliance with the laws of New York, located at Geneva, in the county of Ontario and state of New York, in the sum of $6,000, to be paid to the association, or its attorney, successors or assigns. It will be noticed the first clause states that the installments are to be paid to the treasurer of the association, but whether they were to be paid to him directly in New York, or to his agent, or to the agent of the association in Utah, does not appear. The second provision or clause states that the association was organized by virtue of the laws of New York, and that the penal sum is to be paid to the association, or its attorney or assigns; but this does not refer to the payment of installments, and as to them the place of payment is left as indefinite as in the clause from the trust deed. Nor does a careful perusal of either or both instruments, however adroitly drawn to meet every contingency, reveal a provision which in express terms designates the place where the installments of interest and premium must be paid; and as matter of fact, appearing from the respondent's own admission at the trial, all payments, of what kind soever, under the contract, were made at the city of Ogden, Utah, to the agent of the association. So both the bond and deed of trust were executed and delivered in Ogden. Nor do we find any provision in the by-laws of the association which, under the facts disclosed by the record in this case, would warrant us in holding that the contract in question was to be performed in the state of New York; but, on the contrary, the facts are such that we feel warranted in the opinion that the contract was to be performed in Utah, and hence is governed by the laws of Utah; and this result is in entire accord with the conduct and acts of the parties, for, as we have seen, all payments of installments under the contract

were actually made in Utah. Thus, the parties them-
selves treated it as a contract made and to be performed
in Utah. No doubt, the general rule is well settled that
where a contract is made in one state or country, and
contains express stipulations that it is to be performed
in another, it will be governed by the laws of the place
of performance. We do not doubt the soundness of this
general principle. Nor do we question the correctness of
the cases cited by counsel for the respondent on this point.
We simply say they cannot avail the respondent under the
facts shown by this record.

Fowble having thus entered into a contract with the as-
sociation which is governed by the laws of this state, the
appellant Mary Boreman by the clause of assumption con-
tained in the deed of conveyance undertook no greater or
different obligation than that which had devolved·upon
her grantor. The question therefore is whether, under
the contract and the laws of Utah, she, being merely a
purchaser of the mortgaged premises, who has under-
taken to discharge the obligation of her grantor under his
contract with the association (he having been one of its
stockholders), is entitled, upon the foreclosure of the deed
of trust, to be credited on the principal debt with the pre-
mium installments paid on the stock. A similar question
was before this court in *Sawtelle* v. *Building Co.*, 14 Utah,
443, and we there said: "The ultimate object of the
monthly payments is the extinguishment of the debt.
This is true, regardless of the efforts of the agents
of such corporations to obscure the relationship of the
payments to the principal sum. Whatever may be their
ingenious devices to show to the borrower that the loan
in some mysterious way pays itself without his knowledge,
and that the monthly payments of the dues are a profit-
able investment in stock, the fact is that the loans are

paid by means of the monthly assessments on the stock. This kind of a contract for the loaning of money is not such as to commend itself to the special favor of a court of equity; and while it is not necessary, and is not our intention, to pass upon its validity, in this case, under the laws of this state, as between a member and the corporation, still it is important to notice the results which would flow from a specific performance of it." This language applies with equal force to the case at bar, and while it is not our purpose to determine in this case to what extent we would enforce such a contract between a member and the association, or to demonstrate what the result of a specific performance of such a contract would be, still, from a careful examination of the by-laws and instruments which it is claimed constitute the contract herein considered, we are of the opinion that, under the laws of Utah, it cannot, in a foreclosure proceeding, be enforced so as to work a forfeiture of any monthly payments. In the absence of express legislative sanction, a court of equity would not be justified in countenancing such forfeitures. Where, as in this case, the association has undertaken, by foreclosure proceedings, to determine the relations existing between it and the grantee of the mortgaged premises, who has assumed and agreed to pay the debt, such grantee has a right to have the stock payment, whether paid as dues or premium credited on the loan. 4 Am. & Eng. Enc. Law (2d Ed.) 1059; *Sawtelle* v. *Building Co., supra; Tilley* v. *Association,* 52 Fed. 618; *Mills* v. *Association,* 75 N. C. 292; *Randall* v. *Protective Union,* 42 Neb. 809; *Overby* v. *Association,* 81 N. C. 56; *Middle States Loan, Bldg. & Const. Co.* v. *Hagerstown Mattress Upholstering Co.,* 82 Md. 506; *Randall* v. *Protective Union,* 43 Neb. 876; *Watkins* v. *Association,* 97 Pa. St. 514; *Association* v. *Scott,*

(Ky.) 34 S. W. 235; *Strauss* v. *Association,* (N. C.) 30 L. R. A. 694; *Robertson* v. *Association,* 69 Am. Dec. 145, 162; *Pryse* v. *Association,* (Ky.) 41 S. W. 574; *Stevens* v. *Association,* (Idaho) 51 Pac. 779; *Falls* v. *Building Co.,* 24 L. R. A. 174.

From the foregoing considerations we are of the opinion that the defendants are entitled to credit on the debt for the $512.50 paid as premiums on the stock for the loan, and that the court erred in not allowing the same. We do not deem it necessary to discuss the other questions presented. The case must be remanded with directions to the court below to enter judgment in accordance with this opinion and set aside its former judgment.

ZANE, C. J., and MINER, J., concur.